725 So.2d 397 (1998)
Donna Lee WILLIAMS, etc., Appellant,
v.
BEAR STEARNS & CO., etc., et al., Appellees.
Nos. 97-2404, 97-2405.
District Court of Appeal of Florida, Fifth District.
December 23, 1998.
*398 Peter N. Smith and Leon Handley and Ronald L. Harrop of Gurney & Handley, P.A., Orlando, for Appellant.
Peter Carr and Bernard H. Dempsey, Jr., of Dempsey & Sasso, Orlando, and Gary G. Staab and, Scott S. Balber of Morgan, Lewis & Bockius, New York, for Appellees Charles Ramsey and Frank R. Ramirez.
Michael R. Levin and Suzanne M. Barto of Rumberger, Kirk & Caldwell, P.A., Orlando, for Appellee Franklin Resources Incorporated.
No Appearance for Appellee Bear Stearns & Co., Inc.
GOSHORN, J.
In this consolidated appeal, Donna Lee Williams ("Appellant"), in her capacity as the insurance commissioner for the State of Delaware and the appointed receiver for National Heritage Life Insurance Company ("NHL"), appeals several orders disposing of NHL's claims against Appellees Charles Ramsey, Frank Ramirez, and Franklin Resources, Inc. ("Franklin"). We affirm in part and reverse in part.
NHL, an Orlando-based insurance company, hired various entities to manage its investment portfolio in the early 1990s, beginning with Bear Stearns and Company, Inc. ("Bear Stearns") in 1991. While Bear Stearns was its advisor, NHL first acquired in its portfolio investments known as "collateralized mortgage obligations" or "CMOs."[1] During 1992, NHL sought investment advice from MMAR Group, for whom Ramsey and Ramirez worked. Allegedly, Ramsey and Ramirez recommended CMOs for NHL and made certain representations about the safety of those investments. Those CMOs eventually resulted in extensive losses for NHL.
In August 1992, Ramsey introduced NHL to Franklin, which purported to have expertise in CMO investing. Apparently no full-fledged advisor-client relationship between NHL and Franklin ever developed; representatives of both Franklin and NHL acknowledged that although the parties were working toward a formal advisor-client relationship, eventually Franklin declined to take NHL on as a client. However, Franklin presented proposals to NHL in an effort to induce NHL to hire Franklin as its investment advisor, and allegedly NHL invested $60 million in assets on Franklin's advice during the negotiation period, during which NHL viewed Franklin as its "interim advisor," and suffered substantial losses.
NHL eventually became insolvent and Appellant was appointed its receiver. On January 26, 1996, Appellant filed a complaint against Bear Stearns, MMAR, Ramsey, Ramirez, Franklin, and others seeking to hold the defendants liable for acts and omissions which allegedly led to losses of over $50 *399 million in NHL's portfolio. The complaint alleged, inter alia, that MMAR, Ramsey, and Ramirez compounded the problems that had been created by Bear Stearns's management of the portfolio, and that Franklin had recommended CMOs which resulted in losses to NHL. The crux of the allegations was that each investment firm had misrepresented or failed to mention the nature and riskiness of CMO investments and their suitability (or lack thereof) for a life insurance company such as NHL. The complaint alleged counts for breach of fiduciary duty, negligence, common law fraud, negligent misrepresentation, unjust enrichment, breach of warranty, and violation of the Florida Securities Act,[2] and demanded an accounting.
Franklin moved to dismiss the counts against it, alleging that the tort claims were barred by the economic loss rule, that Appellant had not adequately pled fraud, that the unjust enrichment count failed to state a cause of action, and that the Florida Securities Act claim was time-barred. Ramsey and Ramirez filed a similar motion to dismiss. On September 26, 1996, the lower court entered an order dismissing the common law tort claims as barred by the economic loss rule, finding that the fraud claims were not pled with the requisite particularity, finding that the warranty claims failed to state a cause of action, and ruling that no claim for unjust enrichment could lie due to the availability of adequate legal remedies. Appellant was given 20 days to file an amended complaint. On November 8, 1996, the court entered an order correcting the September 26 order; the amended order dismissed the breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment, and accounting claims with prejudice and the common law fraud claims without prejudice. The November order also allowed Appellant to file an amended complaint repleading her claims for fraud in the inducement, breach of contract, breach of warranty, and violations of the Florida Securities Act.
On November 21, 1996, Appellant filed her amended complaint alleging counts against Ramsey and Ramirez for fraud in the inducement and violations of the Florida Securities Act and counts against Franklin for fraud in the inducement, breach of contract, beach of oral warranty, breach of written warranty, estoppel, promissory estoppel, and violation of the Florida Securities Act. Franklin filed a motion for summary judgment which was granted by the court on January 9, 1997 as to all except the Florida Securities Act claims. Franklin then moved to dismiss the remaining count based on pleading deficiencies and the statute of limitations. Ramsey and Ramirez moved to dismiss the fraud claims for failure to plead with particularity and the Florida Securities Act claims for untimeliness. On July 31, 1997, the court dismissed with prejudice all of the counts in the amended complaint except for the breach of contract claims against Bear Stearns, MMAR Group, PaineWebber, and Salomon Brothers. This appeal was instituted from the various orders disposing of the claims against Ramsey, Ramirez, and Franklin.

I. ECONOMIC LOSS RULE
First, Appellant argues that the court erred in dismissing her tort claimsspecifically negligent misrepresentation and breach of fiduciary dutyin her original complaint under the economic loss rule. Appellant is correct that the economic loss rule does not apply to the claims against Franklin, Ramsey and Ramirez because those three defendants did not have a contractual relationship with NHL.[3]See, e.g., Pearson v. Ford Motor Co., 694 So.2d 61, 69 (Fla. 1st DCA 1997) ("The economic loss doctrine precludes parties to a contract to recover economic damages resulting from a breach of contract."); Southland Constr. Inc. v. Richeson Corp., 642 So.2d 5 (Fla. 5th DCA 1994) (economic loss rule does not bar tort claims where there is no contract between the parties).
*400 Accordingly, we find that the lower court erred in dismissing Appellant's tort claims under the economic loss rule.

II. UNJUST ENRICHMENT
We also agree with Appellant that her unjust enrichment claims were improperly dismissed. Although Appellees argue that Appellant has adequate legal remedies and therefore no equitable relief can be granted, this notion does not apply to unjust enrichment claims:
The [defendants] contend that Counts III (unjust enrichment) and VI (promissory estoppel) are barred because an adequate remedy exists at law. There is no dispute that under Florida law, the general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available. See e.g. H.L. McNorton v. Pan American Bank of Orlando, 387 So.2d 393, 399 (Fla. 5th DCA 1980). However, this doctrine does not apply to claims for unjust enrichment. Id. [ThunderWave v. Carnival Corp., 954 F.Supp. 1562] at 1565-1566. It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. See id. Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature.
Mobil Oil Corp. v. Dade County Esoil Management Co., Inc., 982 F.Supp. 873, 880 (S.D.Fla.1997). In the instant case, there is no dispute that there was a contract between NHL and MMAR; however, NHL did not have a contract with Ramsey, Ramirez, or Franklin. Hence, the unjust enrichment claims were improperly dismissed as to Ramsey and Ramirez. However, because no commission or fee was ever paid to Franklin and therefore there is no benefit for Franklin to unjustly retain, we affirm the dismissal of the unjust enrichment claims against Franklin.

III. SUMMARY JUDGMENT FOR FRANKLIN
Appellant next challenges the summary judgment that was granted for Franklin on the fraud, breach of contract, breach of oral warranty, breach of written warranty, estoppel and promissory estoppel counts in her amended complaint. We affirm in part and reverse in part.
We agree with Franklin that Appellant's contract-based claims, including breach of warranty, are foreclosed by the lack of privity between NHL and Franklin. See TWM & SM v. American Med. Systems, Inc., 886 F.Supp. 842, 844 (N.D.Fla.1995) ("The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant."); Spolski Gen. Contractor, Inc. v. Jettr-Aire Corp. Aviation Management of Cent. Florida, Inc., 637 So.2d 968 (Fla. 5th DCA 1994) (finding summary judgment properly granted on warranty claims where there was no contract or privity between parties). However, we reject Franklin's contention that Appellant did not adequately plead fraud. Appellant is correct that a fraud claim can be based on misrepresentations as to past experience, see Eastern Cement v. Halliburton Co., 600 So.2d 469 (Fla. 4th DCA 1992), or promises of future action where at the time the statement was made the maker had no intent to perform. Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168 (Fla. 4th DCA 1994). The discussions between NHL and Franklin, as well as the letters sent by Franklin to NHL, could give rise to extracontractual liability. We agree with Appellant that the issue of reasonable reliance on Franklin's allegedly fraudulent representations is for the jury.

IV. FRAUD CLAIMS AGAINST RAMSEY AND RAMIREZ
We also agree with Appellant that the court erred in dismissing the fraud in the inducement claims against Ramsey and Ramirez. The claims are pleaded with the requisite particularity; the amended complaint alleges a time frame and a context in which the statements were made, as well as reporting the substance of the statements in some detail. Cf. First Union Brokerage v. Milos, 717 F.Supp. 1519, 1522 (S.D.Fla.1989) (finding fraud allegations sufficiently specific *401 where they "identified the alleged misstatement, the approximate date of the alleged misstatement, and the particular party who made the alleged misstatement"), aff'd, 997 F.2d 835 (11th Cir.1993).
Appellant properly alleged the elements of fraud in the inducement, and in ruling on the motion to dismiss the court was required to take all well-pleaded allegations of the complaint as true. Hence, the court erred in ruling as a matter of law that Appellant could not in good faith allege that Ramsey and Ramirez lacked the intent to perform. See La Pesca Grande Charters, Inc. v. Moran, 704 So.2d 710, 714 (Fla. 5th DCA 1998) (reversing dismissal of fraud claims for failure to state cause of action where plaintiff alleged "two knowingly false statements of fact made to induce the appellants to buy [a] boat").

V. FLORIDA SECURITIES ACT CLAIMS
Finally, the court erred in dismissing the claims in the amended complaint for violations of the Florida Securities Act. An issue as to the statute of limitations is not resolvable on a motion to dismiss unless from the face of the complaint the application of the defense is apparent. Khalaf v. City of Holly Hill, 652 So.2d 1246 (Fla. 5th DCA 1995). The issue of when the facts giving rise to the cause of action should have been discovered is generally a jury question which is not properly resolved by a motion to dismiss. Morris v. Bischoff, 10 Fla. L. Weekly Fed. D627, 1997 WL 128114 (M.D.Fla. Mar. 4, 1997). Moreover, a plaintiff's claims as to the date of discovery[4] must be taken as true in ruling on a motion to dismiss based on the statute of limitations. Hawkins v. Washington Shores Sav. Bank, 509 So.2d 1314 (Fla. 5th DCA 1987).
The amended complaint alleges both that NHL knew of losses in July 1993 and that the facts giving rise to fraud could not have been discovered until after May 1994. Discovering "losses" is not necessarily equivalent to discovering "fraud," and the issue of the date of discovery is generally a fact question. Reading the allegations of the complaint in the favor of Appellant, the Securities Act claims were improperly dismissed on limitations grounds.

CONCLUSION
In summary, we affirm the summary judgment for Franklin as to the contractual claims only. We reverse as to the remaining claims against Franklin, Ramsey, and Ramirez and remand for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
PETERSON, J., concurs.
HARRIS, J., concurs in part, dissents in part, with opinion.
HARRIS, J., concurring in part, dissenting in part:
I dissent from that part of the opinion which reverses the trial court's dismissal of the negligence claims against Franklin because of the economic loss rule. A contractual remedy, whether it be based on a contract that is express or implied, direct or third party, bars tort actions for failed economic expectations unless the alleged tort is independent of the contractual undertaking. See The Ocean Ritz of Daytona Condominium v. GGV Associates, Ltd., 710 So.2d 702 (Fla. 5th DCA 1998). To properly analyze this case, it is important to consider the time the various court orders were entered, the function of the motions ruled upon, the arguments and pleadings before the court at the time of the rulings, and the issues and argument on appeal.
The initial complaint alleges as against all defendants that "NHL sought the advice and services of the Defendants during the relevant time period and relied upon the Defendants *402 to achieve its investment needs ... Defendants failed miserably in their assigned and well-compensated task." As to Franklin specifically, the complaint alleged: "NHL retained Franklin Resources as an investment advisor. Accordingly, as a result of this retention, Defendant Franklin Resources had the following responsibilities and obligations to NHL: [basically to give sound and prudent investment advice to NHL.]" The complaint then alleges that Franklin gave advice on which it relied and that "[o]nce again, however, the CMO investments recommended by Franklin Resources did not provide the promised results ..." It is clear that the complaint as originally filed and which was before the judge at the time of his order dismissing the negligence claims against Franklin alleged that NHL had retained Franklin for a consideration to give it honest and sound investment advice and that it failed to meet its contractual obligation causing a substantial loss to NHL. Thus, at the time the trial court considered the motion to dismiss the tort claims against Franklin, a contractual relationship was asserted.
The trial judge made the following findings:
2. The plaintiff's common law tort claims are barred by Florida's Economic Loss Rule. The facts alleged in the complaint which constitute the tortious acts are indistinguishable from and interwoven with the facts alleged (or which could be alleged) to constitute breach of contract. The tort damages sought are the same as the damages which are (or could be) sought for breach of contract.
As stated by the court in Sandarac Assoc., Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349, 1351-52 (Fla. 2d DCA 1992):
We conclude, however, that the plaintiff has not established a legal justification in this case to authorize a judicial expansion of negligence law to protect these purely economic expectations arising from the relationship between a condominium association and the parties responsible for the construction of the condominium. We have come to this conclusion after a thorough review of Florida Power and Light[ v. Westinghouse Electric Corp., 510 So.2d 899] AFM [v. Southern Bell Tel. & Tel., 515 So.2d 189, and East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In light of the remedies available to the parties in such a relationship under contract, warranty, and statutory law, these specific circumstances do not warrant the creation of the exception to the traditional common law rule which limits the interests protected by negligence law to interests involving bodily injury and property damage.
The same rationale applies here. The relationship between a financial advisor and his client is not unlike the relationship between any other provider of professional services and its client. The service was architect/engineering in Sandarac and was consulting architect in Ocean Ritz. In any event, if a contractual relationship exists, if the damages sought are those recoverable under contract, and if the alleged tort is not truly independent of the contractual undertaking, the economic loss rule should prevail.
If the trial court was correct in dismissing the tort claims based on the original pleadings before it, as I believe it was, does the ruling become erroneous because at a later date NHL either improperly pleads or fails to establish at summary judgment a contractual claim against Franklin? I think not.
At summary judgment, contrary to the allegations of its initial complaint, the court found that NHL had failed to prove that Franklin received any compensation for its advice and hence no contract was shown to exist. But that doesn't alter the pleadings before the court at the time of its initial order dismissing the negligence counts.
NHL claims that since advice given by Franklin while it was an interim advisor was faulty but relied on by NHL to its detriment, a cause of action arises under section 552 of the Restatement (Second) of Torts (1977). But the issue is not whether NHL can state a cause of action in negligence; the issue is whether a cause of action in negligence, otherwise proper, is sustainable if a contractual relationship exists.
*403 Even in its brief before this court, NHL advocates a contractual relationship between itself and Franklin. While it asserts that section 552 preempts the economic loss rule as to Franklin, Ramsey and Ramirez, it additionally urges "the individual tort claims against Ramsey and Ramirez are not barred by the economic loss rule because there is no contract between NHL and them." I would sustain the dismissal of the tort claims against Franklin.
NOTES
[1] For an in-depth discussion of the nature and risks of CMO investments, see Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1022-1023 (4th Cir. 1997).
[2] Chapter 517, Florida Statutes.
[3] The dissent contends that NHL and Franklin had or may have had some sort of a contractual relationship which bars NHL's tort claims under the economic loss rule. However, this contention overlooks the fact that the lower court entered summary judgment for Franklin on the contract-based claims, which we affirm infra in section III of this opinion.
[4] Paragraph 95.11(4)(e), Florida Statutes, provides for a two-year statute of limitations for claims under the Florida Securities Act, stating in part:

(e) An action founded upon a violation of any provision of chapter 517, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, but not more than 5 years from the date such violation occurred.